BOARD OF SUPERVISORS OF MONROE COUNTY v. THE STATE.

1. ROAD LAW. *Provision as to implements for working. Constitutionality thereof.*
   The act entitled " An Act to amend the road laws as applicable to Monroe County," approved March 8th, 1884, which provides that it shall be the duty of the board of supervisors to furnish road overseers with such implements as may be necessary to put the roads in good condition is not unconstitutional. And the fact that such law seemed unwise to the board, or that there was no money in the treasury, or authority for a special levy of taxes, or that a general levy to the full extent allowed by law had already been made to meet outstanding warrants, is no excuse for failure to execute such law.

2. SAME. *Mandamus. Power of court.*
   The circuit court has power to order a mandamus to compel the board of supervisors to execute such law, if they refuse; but it has not the right to specify how the law shall be executed, unless called upon to deal with the board for contempt in refusing to obey the mandamus.

APPEAL from the Circuit Court of Monroe County.
HON. J. W. BUCHANAN, Judge.

J. L. Finley, as district attorney, filed a petition in the Circuit Court of Monroe County, which set out that by virtue of an act of the legislature approved March 8, 1884, entitled " An Act to amend the road laws as applicable to Monroe County," it was made the duty of the board of supervisors to furnish the road overseers with such implements as might be necessary to work the roads in said county ; that the overseer of a certain road in the county applied to the board for the necessary implements to work his road, but they refused to furnish any implements or to make any appropriation to pay for any, on the ground, as the petitioner was informed, that the law above referred to was an unwise one. The prayer was that a writ of mandamus issue to compel the board to comply with the law and furnish the necessary implements. The board of supervisors answered in three pleas, to wit :

1. That the implements demanded by the overseer were not necessary to enable him to make a good road.

2. That at the time the overseer asked for the implements the county had no money, and there were outstanding warrants suf-

ficient to require the levy of the maximum tax allowed by law, and that no special tax was provided for by the act of 1884.

3. That since the filing of the petition for mandamus the board has levied the maximum tax allowed by law, and not being allowed, under the act of 1884, to levy a special tax to carry it into effect, they are powerless.

The petitioner joined issue on the first plea, and demurred to the second and third. The demurrers were sustained. On the issue joined on the first plea a trial by jury was waived, and the court rendered judgment thereon for the petitioner, and ordered in its final judgment that a mandamus issue requiring the board of supervisors to furnish the road overseer with six scrapers, twenty long-handled shovels, four picks, six axes, six spades, and three large road plows. From this judgment the defendant appealed.

*Sykes & Bristow*, for the appellant.

1. Mandamus will not lie to compel the board of supervisors to purchase any amount of implements for working the roads under *Acts* 1884, *p.* 327.

The act itself leaves it to the discretion of the board. If it had not, the law would have been *unconstitutional*.

*Section* 20 *of article* 6 *of the constitution of Mississippi* confers on the board of supervisors, the county legislature, " full jurisdiction over roads, ferries, and bridges," just as it confers equity jurisdiction upon the court of chancery, and appellate jurisdiction on this court. It is not within the power of the legislature to take away these several jurisdictions, or *bestow them on other tribunals.*" *Supervisors* v. *Arrighi,* 54 Miss. 672.

2. If the board had no money, and the entire tax which they were authorized to levy had been anticipated, and expropriated in advance to other legal demands, they show they *could* not comply with the request. When asked to pay out money, they must answer, like the " heathen Chinee" to the drowning man, who cried to him to throw him a rope : " *No have got—how can do ?*"

3. If mandamus can *possibly* be maintained in a case like this, and if *any* judgment could legally be rendered—which we need not say we emphatically deny—at the most the judgment can but

order the board to " purchase and pay for all such implements and property which may be needed in keeping the roads worked and in proper condition."

The circuit court cannot specify the *number or cost* of hoes, spades, picks, or plows.    That must be left to the discretion of the board of supervisors.

The judgment of the circuit court in deciding what was needed and ordering the purchase was a plain usurpation of jurisdiction.

· *Houston & Reynolds,* for the appellee.

1. The board of supervisors was created to execute the laws as passed by the legislature pertaining to the department over which they have been assigned, if they will, but if they are recusant, the judicial department will step in and enforce the performance. While, in a sense, the jurisdiction of the board of supervisors over roads, ferries, and bridges may be considered "*full,*" certainly it cannot be considered as exclusive.

2. It was the duty of the board to the public, as a matter of public interest, to have taken notice of the law and of their volition to have performed that duty without being called on otherwise.    This law was passed March 8, 1884, about eighteen months prior to the time this petition was filed, so that it is no excuse to say that when this petition was filed they had exhausted their power to levy a tax for the purchase of the implements, having made two levies, after this law was passed, before the filing of this petition.

3. Under the constitution the board had the right to collect and levy a special tax for the purpose of purchasing implements or material for the putting and keeping the public highways in good condition for the convenience of the public.

4. Counsel for the board argue that the remedy was not by mandamus against the board of supervisors, but by appeal.    How can an appeal be taken from the non-action of the board when they sit as mum as so many other dumb brutes, neither indicating by tongue or record what they have or will do, but silently disperse without doing anything or taking a vote or any action one way or another.

CAMPBELL, J., delivered the opinion of the court.

"An act to amend the road laws as applicable to Monroe County," approved March 8, 1884, is free from any constitutional objection, and, if it is as unwise as the board of supervisors of the county is said to have regarded it, that furnished no justification of its refusal to regard and enforce the will of the legislature as expressed in the act. Nor was the fact that there was no money in the county treasury, and no authority for a special levy, and a large amount of outstanding warrants, and a levy by the board to the full extent allowed by law any excuse for failure to execute the law. The circuit court did right to order a mandamus to the board to execute the law, but should not have specified what it should procure, and should have stopped with awarding the writ, and, if called on to deal with the board for contempt in not obeying the writ, might inquire into the manner in which it executed the law.

*Judgment reversed and judgment here that a mandamus shall issue directed to the board of supervisors commanding it to execute the act mentioned according to its terms.*